CHARLES H. ADAMS, Appellant, v. THE CITY OF COHOES, Respondent.

| 127 | 175 |
|-----|-----|
| 159 | 33  |
| j 159 | 47 |

*It seems,* that where, in consequence of the holding over by a tenant after the expiration of a term of years, his tenancy has become one from year to year, he has the right to quit the premises, and terminate the tenancy at the end of any year without giving his landlord previous notice of his intention so to do.

Defendant had been occupying certain premises belonging to plaintiff under a tenancy from year to year commencing on May first of each year, the rent being paid semi-annually. In August, 1885, defendant hired other premises, and removed thereto ; it tendered a key of one of the doors of plaintiff's premises to his agent which he declined to take, and that key with the others were left in the doors. Plaintiff was informed by his agent of the removal within two or three weeks thereafter. In an action brought by plaintiff to recover the rent falling due November 1, 1885, defendant answered alleging an eviction by reason of certain nuisances created or permitted by plaintiff. Judgment was rendered in plaintiff's favor, which was paid by defendant as was also judgment for rent due May 1, 1886. In this action brought to recover rent alleged to be due November 1, 1886, *held,* that assuming plaintiff was entitled to notice of an intention to terminate the tenancy at the end of the current year, *i e.,* May 1, 1886, sufficient notice was given.

Also *held,* that said judgments simply determined the right of plaintiff to recover for the year ending at the date last mentioned; and that defendant was not liable for rent thereafter.

Reported below, 53 Hun, 260.

(Argued April 15, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 6, 1889, which affirmed a judgment in favor of defendant, entered upon a verdict directed by the court.

This action was brought to recover rent of rooms on the second floor in plaintiff's building occupied by the officers and agents of defendant.

The occupation was under these circumstances : The defendant had prior to March 1, 1875, occupied certain rooms in plaintiff's buildings at the agreed annual rent of $700, payable semi-annually on May first and November first in each year.

In April, 1875, plaintiff gave defendant notice that after

May 1, 1875, he should require a rent of $1,200 a year, and the defendant's common council passed a resolution as follows :

" *Resolved,* That the mayor be and hereby is authorized to rent for the use of the city the premises in Egbert's Hall, now occupied as common council chamber and offices for justices and city officials, for a period of three years from May first prox., at an annual rental of twelve hundred dollars ($1,200)."

There was no written lease or other writing in relation to the matter. The defendant continued to occupy for the three years succeeding May 1, 1875, and paid the annual rent of $1,200 on the first days of May and November, and continued to occupy thereafter until August, 1885, when it removed its goods and furniture to another building called Larkin's Hall and vacated the premises.

This removal was known to plaintiff's agent, who was engaged in renting and collecting the rents of these rooms and other properties of plaintiff, and some ten days afterwards a verbal notice was given to such agent of the plaintiff of such removal by defendant and at the same time a key was tendered to him which he declined to take, and it, with the keys to other doors, was left in the doors. July 21, 1885, plaintiff sent a communication to defendant's common council proposing to sell Egbert's Hall or lease the second and third floors to defendant. The plaintiff was informed by his agent of defendant's removal within two or three weeks after it took place. Defendant did not pay the rent which *fell due November* 1, 1885. *Plaintiff brought an action which was defended and a recovery was had for the rent.*

The plaintiff alleged in the complaint in that action that " on the 1*st day of May,* 1885, the defendant hired from the plaintiff," describing the premises, " at the yearly rent of $1,200, payable in half year installments," and " that the defendant took possession of and occupied said premises under said agreement," and " that the sum of six hundred dollars being the part of said rent due on the 1st day of November, 1885, is still unpaid." The answer of defendant in that action admitted the hiring as alleged in the complaint, and set up the

defense that on the 1st day of August, 1885, the plaintiff permitted the existence of a nuisance from the odor of offensive water closets, and also from noises created by stamping of feet, beating of drums and tambourines by a band of the Salvation Army, by reason of which defendant was evicted.

The defendant did not pay the rent which fell due or was claimed to have fallen due on May 1, 1886, and the plaintiff recovered a judgment therefor by default and the defendant paid the judgments.

This action was brought to recover the half year's rent which fell due (as alleged) on the 1st day of November, 1886.

*Edwin Countryman* and *Earl L. Stinson* for appellant. The relation existing between the parties, under which the defendant has occupied the leasehold premises since 1875, as established by the evidence, was that of a tenancy from year to year. (*Laughran* v. *Smith*, 75 N. Y. 205; *Reeder* v. *Sayre*, 70 id. 180; *Blumenthal* v. *Bloomingdale*, 100 id. 559; *Fougera* v. *Cohn*, 43 Hun, 454; 118 N. Y. 309; *People* v. *Darling*, 47 N. Y. 666; *Jackson* v. *Salmon*, 4 Wend. 327; *Conroy* v. *Starkweather*, 1 Den. 113; *Pugsley* v. *Aikin*, 11 N. Y. 494; *Schuyler* v. *Smith*, 51 id. 309, 313; *Thorp* v. *Philpin*, 22 N. Y. S. R. 27; *Witt* v. *Mayor, etc.*, 5 Robt. 248; 6 id. 441; *Shanahan* v. *Shanahan*, 23 J. & S. 339; Taylor's Landl. & Ten. [7th ed.] § 467; *Hughes* v. *Lines*, 119 N. Y. 423; *Ackley* v. *Westervelt*, 86 id. 448, 452; *Brown* v. *Mayor, etc.*, 66 id. 385, 390; *Jarvis* v. *Driggs*, 69 id. 143, 146.) A tenancy from year to year can only be terminated, without mutual consent, by a formal notice thereof by one of the parties to the other, to take effect at the end of some particular year of the holding, and for the last day of such rental year. (*Reeder* v. *Sayre*, 70 N. Y. 180, 186–188; *Pugsley* v. *Aikin*, 11 id. 495, 498; *Laughran* v. *Smith*, 75 id. 205; *Witt* v. *Mayor, etc.*, 6 Robt. 442; *Burns* v. *Bryant*, 31 id. 453; *Larned* v. *Hudson*, 60 id. 102; *People* v. *Schackus*, 48 Barb. 551; *Prouty* v. *Prouty*, 5 How. Pr. 81; *Wright* v. *Mosher*, 16 id. 454; 4 Kent's Comm. 111, 112; *Nichols* v. *Williams*,

8 Cow. 13.) There has been no actual or implied surrender of the premises to the lessor. None is alleged in the answer. No such point is distinctly raised in any of the numerous grounds of objection mentioned, or of the exceptions taken during the trial. Nor would the point have been available if it had been raised. (*Mallett* v. *Brayne*, 2 Campb. 103; McAdams' Landl. & Ten. 467; *Doe* v. *Ridout*, 5 Taunt. 519; Brown's Statute of Frauds, §§ 45, 46; Taylor's Landl. & Ten. §§ 507, 514; *Thomas* v. *Nelson*, 69 N. Y. 118, 121; *Townsend* v. *Albins*, 3 E. D. Smith, 560; *Peck Case*, 18 Hun, 183; *Sully* v. *Schmitt*, 31 N. Y. S. R. 443, 446; *Spies* v. *Voss*, 30 id. 549.) The point that there could be no recovery because there was no actual occupancy of the premises during the period for which the rent in question accrued is untenable. (*Hall Case*, 34 N. Y. 284; *Hoffman* v. *Delehanty*, 13 Abb. Pr. 388.) The fact that the city leased and occupied only a part of the premises does not change the nature of the tenancy or the rules regulating its manner of continuance or termination at least so far as the present controversy is concerned. (Taylor's Landl & Ten. [7th ed.] §§ 66, 67; *Simons* v. *Seward*, 22 J. & S. 406; *Doupe* v. *Genin*, 45 N. Y. 119.) The fact that the defendant is a municipal corporation does not modify in any degree the nature and incidents of the tenancy created by its own authorized and voluntary action. (Laws of 1869, chap. 912, §§ 1, 7, 8; *Witt* v. *Mayor, etc.*, 6 Robt. 441; *Brown* v. *Mayor, etc.*, 66 N. Y. 385.) The common council having, therefore, authorized the creation of a tenancy from year to year, and the indebtedness that necessarily followed, the city is liable, and the plaintiff is entitled to recover for the amount of rent claimed in the complaint. (*Buck* v. *Lockport*, 43 How. Pr. 361; *Moore* v. *Mayor, etc.*, 73 N. Y. 238; *People* v. *Kingston*, 101 id. 83; *Gourd* v. *Buffalo*, 2 Abb. Ct. App. Dec. 236; *Van Wort* v. *Mayor, etc.*, 52 How. Pr. 78.)

*Nathaniel C. Moak* and *George H. Fitts* for respondent. The finding by the referee in plaintiff's suit commenced December 12, 1885, that defendant still continues in occupation and

possession thereof, was purely gratuitous, uncalled for and is not binding on defendant. (*Lorillard* v. *Clyde*, 99 N. Y. 196; *Cauhope* v. *Parks*, 121 id. 152; 23 Abb. [N. C.] 397; *Getty* v. *Hamilton*, 46 Hun, 4; *Marsh* v. *Sweet*, 66 N. Y. 209, 210 *Ballou* v. *Parsons*, 11 Hun, 602.) A fact admitted by pleadings between parties can always be invoked and is always available even though not referred to in the court below. (*Tell* v. *Consolidated, etc., Co.*, 119 N. Y. 654, 655, 656; *Dunham* v. *Cudlipp*, 94 id. 129, 134; *Eaton* v. *Wells*, 82 id. 578, 579, 580.) The circumstances and surroundings showed beyond controversy that both parties understood it was a leasing to expire May 1, 1886. (*Talamo* v. *Spitzmiller*, 120 N. Y. 37; *Clark* v. *Baird*, 9 id. 183; *Waterbury* v. *Sturtevant*, 18 Wend. 353; *Stewart* v. *Strasburger*, 51 How. Pr. 388; *Burns* v. *Bryant*, 31 N. Y. 453; *Thomas* v. *Nelson*, 69 id. 118.) Defendant had a right at the expiration of any year to cease occupying the premises without any notice of an intention to do so. (*Livingston* v. *Tanner*, 12 Barb. 484; McAdam on Landl. & Ten. § 110; *Park* v. *Castle*, 19 How. Pr. 29; *Schuyler* v. *Smith*, 51 N. Y. 316; *Ackley* v. *Westervelt*, 86 id. 453; *Chase* v. *S. A. R. R. Co.*, 97 id. 389; *Laughran* v. *Smith*, 75 id. 210; *Gibbons* v. *Dayton*, 4 Hun, 451; *Austin* v. *Strong*, 47 N. Y. 679; *Condert* v. *Cohn*, 118 id. 311; *Talamo* v. *Spitzmiller*, 120 id. 37.) Where a statute declares under what circumstances, and how a debt may be created by a municipal corporation, one dealing with it is bound to know its powers, and to ascertain whether the attempted action is within the statute. If not, he has no cause of action against it, however meritorious his claim may be. (*Cowen* v. *West Troy*, 43 Barb. 49; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Lyddy* v. *Long Island*, 104 id. 218, 222, 223; *Smith* v. *Newburgh*, 77 id. 130, 136, 137; *Donovan* v. *Mayor, etc.*, 33 id. 291.) The evidence of acts showing a vacating of plaintiff's premises, the hiring of other premises, the payment of rent therefor, were competent to show an utter and total abandonment by defendant of plaintiff's premises. (*Nichols* v. *White*, 41 Hun, 152; *Quincy* v. *White*, 63 N. Y. 380; 1 Greenl. on Ev. § 108.)

POTTER, J.   There are two questions involved in the consideration of this appeal.   The one is whether the defendant was bound to give the plaintiff notice of its intention to quit the premises before it could successfully maintain a defense to the claim for rent set forth in the complaint in this action and if it was so bound, whether the undisputed facts established upon the trial of the action, do not constitute such notice.

If such notice was not required, or if required and was sufficiently given, the direction of the trial court to the jury to render a verdict for the defendant was proper.

From the examination I have given the record in this case, I entertain a clear conviction that the defendant was not bound to give the plaintiff such notice, and if it was bound to, sufficient notice was given.

The plaintiff's contention is to the effect that the tenancy of the defendant to the plaintiff, formerly existing, had not been legally terminated prior to May 1, 1886, and that the defendant continued liable to pay the plaintiff the rent of the premises from that date to the 1st day of November, 1886.   It is undisputed that the occupation of the premises by defendant ceased upon the 1st day of August, 1885, and I am of the opinion that the legal tenancy ceased on the first day of May following that date.

The defendant had prior to May, 1875, occupied the premises with the consent of the plaintiff for some years, and paid the plaintiff as annual rent for the same, the sum of seven hundred dollars in half yearly payments, upon the first days of May and November in each year.

In the month of April, 1875, the plaintiff gave the defendant notice that from May 1, 1875, the rent of the premises occupied by defendant would be twelve hundred dollars a year. Thereupon the common council of the defendant passed a resolution authorizing its mayor to lease the premises of the plaintiff for the period of three years from May 1, 1875, at a rent of twelve hundred dollars a year.   There was no specification either in the requirement of the plaintiff or in the resolution of defendant when or in what installments the rent

should be payable. But that is not at all important, for the defendant paid the increased rent half yearly as it had paid the former rent.

No written lease was executed between the parties, and as a parol lease for a period beyond one year is void, the relation that resulted between the parties was a lease for a year if the tenant occupied the premises during that period; and if the tenant continued in the occupancy of the premises beyond the year, he thereby became a tenant from year to year at the same rate of rent. (*Reeder* v. *Sayre*, 70 N. Y. 180–182 ; *Laughran* v. *Smith*, 75 id. 209 ; *Coudert* v. *Cohn*, 118 id. 309–311; *Talamo* v. *Spitzmiller*, 120 id. 37–43.)

The language of the court in *Reeder* v. *Sayre* (*supra*) is : " The agreement, though by parol, and void as to the term and the interest in lands sought to be created, regulates the relations of the parties to it in other respects upon which the tenancy exists, and may be resorted to to determine their rights and duties in all things consistent with and not inapplicable to a yearly tenancy, such as the amount of rent to be paid, the time of year when the tenant could be compelled by the landlord to quit, and any covenants adapted to a letting for a year. (*Doe* v. *Bell*, 8 T. R. 579 ; 8 Cow. *supra ; Arden* v. *Sullivan*, 14 Q. B. [Ad. & El. N. R.] 832 ; *Doe* v. *Amey*, 12 Ad. & El. 476 ; *Berrey* v. *Lindley*, 3 M. & G. 498; *Edwards* v. *Clemons*, 24 Wend. 480.) "

And the court through Justice BRADLEY in the above cited case, *Talamo* v. *Spitzmiller*, says : " While there may appear to have been some confusion in the cases in this state upon the subject, this doctrine has been more recently recognized. (*Reeder* v. *Sayre*, 70 N. Y. 184; *Laughran* v. *Smith*, 75 id. 209.)

In the cases last cited the tenants had been in possession more than a year when the question arose, but having gone into occupancy under an invalid lease, their yearly tenancy was held dependent upon a new contract, which might be implied from the payment and acceptance of rent, and when once created could be terminated by neither party without the consent of the other, only at the end of the year."

The plaintiff contends that until the tenancy was terminated by a notice from the defendant that he intended at some definite future period to quit the premises, the tenancy and defendant's liability to pay the rent continued.  Now what are the relations between landlord and tenant in a tenancy for a year or from year to year in respect to the amount of rent and the duration of the term or of the cessation of tenant's liability to pay rent?  The rate of rent is that specified in the lease for a year or in the void lease.  When the term expires in a valid lease, at a fixed and defined period, or when the term is for one year by reason of the lease being void under the statute of frauds and occupation for that period, no notice to quit is necessary.  When the parties have agreed in the lease or the law has fixed the period of the termination of the tenancy, it would be a work of simple supererogation to give such notice. Hence where the duration of the term is fixed, there is no rule nor any reason for a rule, requiring any notice to quit to be given.  (§ 107, McAdam, Landlord and Tenant, and cases cited.)

In tenancies for a term fixed by the lease or by law for the want of a valid lease as to the term, the rights of the parties are determinate.  The landlord in such lease has the right of an election.  He may, if the tenant does not vacate the premises at the end of the term, treat him as a wrong doer and bring ejectment or take summary proceedings under the statute to remove him from the premises and he is not required before doing so to serve the tenant with any notice to quit (*Park* v. *Castle*, 19 How. Pr. 29 and the cases there cited), or the landlord may waive his right to the immediate possession and the wrong of the tenant in remaining beyond the expiration of the term and recover of him the rent for another year, for the tenant by remaining over has, by implication, become a tenant for another year from the expiration of his term. (§ 21, McAdam L. & T., citing *Schuyler* v. *Smith*, 51 N. Y. 309; *Mack* v. *Burt*, 5 Hun, 28; *Conway* v. *Starkweather*, 1 Denio, 113.)   So absolute is the implication from holding over for a few days only, of a hiring for another year, that the tenant will not be excused from the payment of rent, even

where he gave the landlord notice before the end of the term that he did not intend to hire for another year and had hired other premises which would be ready for his occupancy in a few days. (*Schuyler* v. *Smith, supra.*) A good illustration of this rule is to be found in the judgments put in evidence in this case where the plaintiff herein recovered the rent of the entire year, although the defendants had removed from the premises with the knowledge of the plaintiff nine months before the end of the year for which the plaintiff recovered the rent. At the end of the year thus hired by implication, the rights and the remedies which existed at the end of the former term are again revived. Those rights are, as we have seen, that the landlord may remove the tenant without notice and the tenant may quit the possession without giving the landlord any notice of his intention to do so. (§ 110, McAdam L. & T. ; *Park* v. *Castle* and the other cases above cited.)

In *Ludington* v. *Garlock* (29 N. Y. S. R. 600) it was held in a case of a lease from month to month and the tenant held over, that the tenant who vacated the premises at the end of a subsequent month and gave the agent of the landlord notice of that fact and left the keys with him, that the tenant was no longer liable for the rent of the premises. That case is analogous to this in all respects, except that was a tenancy from month to month and this is a tenancy from year to year. In that case the tenant paid during the time of the occupancy and quit at the end of the month. In the case at bar the defendant did not quit the possession at the end of the year as it had the right to do and was, therefore, compelled to pay for nine months after it quit the premises, because it did not quit the premises at the end of the year, but occupied them three months beyond the end of a year.

It is quite apparent from the cases above cited that the necessity or occasion for the service of a notice to quit upon the part of the landlord or tenant, has no application to a tenancy which terminates at a fixed period. It is only in cases where the end of the term is not fixed, as in tenancies at will or at sufferance, that the landlord is required by law before

bringing ejectment or summary proceedings to recover possession from a tenant to give notice to quit. (2 R. S. 5, § 28; 1 id. 745, § 7.) Those statutes are evidently based upon that theory. (*Park* v. *Castle, supra.*)

I find no case, and upon principle I should not expect to find a case, holding that it was not the right of the tenant to leave the premises at the end of the term or requiring him to give the landlord in such case a notice of his intention to quit the premises.

We have before seen in *Park* v. *Castle* (*supra*), and the other cases cited, that in such case the landlord is not bound to give the tenant notice to leave even for the purpose of instituting summary proceedings to recover possession of the premises.

If such is the case in respect of the landlord, why should it not be so as to the tenant? Their rights and duties are correlative or reciprocal.

My conclusion is that the defendant in this case had the right to quit the premises at the end of any year from the first day of May without giving the plaintiff any notice of his intention to do so.

The only object of such notice must be to inform the landlord that the relation of landlord and tenant was to cease and thereafter the landlord would be at liberty to repossess the premises and to lease them to another. If the law requires any notice it has prescribed no form for it. (70 N. Y. 187, *supra.*)

Any notice, therefore, which in a reasonable manner conveyed information to the landlord that the tenant would cease to be such, would suffice for that purpose.

Assuming, without deciding, that the landlord was entitled to six months or any other period of notice of an intention to terminate the tenancy at the end of the then current year, viz., May 1, 1886, would not the tender of the premises, the quitting of the possession on the 1st day of August, 1885, the hiring and actual occupation of other premises and without any re-entry and a flat refusal to pay rent subsequent to that

date, and the interposition of a verified answer in an action to recover such rent by the defendant, that he had been evicted from the premises by the conduct and permission of the landlord, answer the purposes and objects of such notice? He must be a very dull landlord indeed that could not derive from such facts some degree of knowledge, or at least a very suggestive hint that the defendant intended to terminate its tenancy and at the earliest practicable moment.

The conclusion we have reached renders any special reference to the effect of the judgments recovered by plaintiff against the defendant for the rent of the year ending May 1, 1886, unnecessary. Those judgments simply accord with the result we have reached aside from their consideration and that is, that the defendant was liable for the rent of the year ending May 1, 1886, at which time the lease terminated and the defendant had the right to quit the premises.

It certainly cannot, in the view we have taken, be reasonably contended that the judgments not only determined the liability of defendant to pay the rent for the year specified in the complaint, but also for subsequent years in an indefinite future.

The judgment should be affirmed, with costs.

All concur, except PARKER, J., not sitting.

Judgment affirmed.