ARTHUR W. BASTEDE, Plaintiff, *v.* GUST LEVAN, Defendant.

City Court of Jamestown, April 28, 1939.

*Lombardo & Pickard* [*Clarence G. Pickard* of counsel], for the plaintiff.

*Coyle A. Boyd* [*W. Travis Look* of counsel], for the defendant.

BARGAR, J. This is an action seeking judgment for rentals claimed to be due. The plaintiff is not the owner suing but claims the rentals under the following facts:

The plaintiff had leased the premises in question from a former owner under a five-year contract, the term of which expired on September 30, 1938. The lessor in the five-year contract had, before its expiration, transferred the premises in question to a corporation known as West Second & Washington, Inc.

The issue involved here is solely whether the undisputed rent involved should be paid to the present owner, West Second & Washington, Inc., or the plaintiff.

In the month of June, 1938, Dr. Frank D. Tyler was elected president of West Second & Washington, Inc. He immediately took active charge of the business of the corporation.

It appears without substantial dispute that the president had a series of conversations with the plaintiff in regard to the insufficient income paid under and pursuant to the terms of the written lease. The new landlord informed the plaintiff that he would be obliged to increase the rent if he remained in possession after the termination of the lease. It was during these conversations that the

plaintiff informed Dr. Tyler that it would be impossible to increase the rental, and agreed to vacate. He, however, requested additional time within which to find a new location, so as to avoid the cost of storing his personal property and losing contact with his subtenants. To this application the doctor replied that he would give him a reasonable time within which to find a new location, and remove from the premises.

It appears by the testimony of the various witnesses that, during the early part of the fall of the year 1938, the plaintiff visited Akron, Ohio, Bradford, Pa., and examined other locations in the city of Jamestown. He informed the various subtenants that he intended to move, and in fact took one of them to Bradford, and indicated a new location which the subtenant could have. There was likewise a conversation between the plaintiff and the representatives of the Cooney Refrigeration Company, which occurred in the presence of Dr. Tyler, wherein arrangements were made for the removal of certain personal property from Jamestown to Bradford, wherein the refrigeration company, by obtaining the contract for taking care of refrigeration in the new location, agreed to move the plaintiff from Jamestown to Bradford as a part of the contract. One or more loads of personal property were so removed.

On October 31, 1938, the attorney for Dr. Tyler addressed to the plaintiff the letter in evidence as defendant's Exhibit 1, which directed the plaintiff to vacate the premises as of December 1, 1938. A notice was likewise directed to this defendant, and other subtenants, advising them of the change of ownership as of December 1, 1938, and directing the payment of rental to the new landlord. The plaintiff failing to remove on December first the owner re-entered the premises, changed the locks upon the doors, demanded and received rents from this defendant and from other subtenants. This defendant and the other subtenants have ever since paid their rent to West Second & Washington, Inc. This action is brought to recover such rental.

The rule is well settled that when a tenant for a definite term holds over, the landlord has the option, or the right of election, to hold him as a tenant for not more than one year, depending upon the term of the original lease, or to treat the tenant as a trespasser, and re-enter the premises. It is definitely the election of the landlord and not the tenant which determines whether a term for one year automatically comes into existence. It is the landlord alone whose intention on the subject is to be investigated. (*Adams* v. *City of Cohoes*, 127 N. Y. 175; *Stewart* v. *Briggs*, 147 App. Div. 386.)

It is equally well settled that if the holding over by the tenant is with the consent of the landlord for some particular purpose,

or for a specified time, the tenant cannot be held for another term. (16 R. C. L. 1165; 35 C. J. 1105; *City of New York* v. *Union News Co.*, 222 N. Y. 263.)

Upon this issue, the court believes the testimony of Dr. Tyler. Clearly there is nothing in his testimony which would slightly suggest any intention of continuing the plaintiff in possession for a period of a year. On the contrary, there is an unyielding attitude upon his part that the plaintiff must surrender the premises, but granted to him a reasonable time within which to find a new location and remove his personal property.

The acts and the conduct of the plaintiff Bastede substantiate the attitude of Dr. Tyler in this respect. His statements to this defendant, and other tenants, to the effect that he was going to move, his investigation for a new location at Akron, Bradford and elsewhere, his negotiations with truckers and refrigerator men with respect to moving, and finally a surrender of a portion of the premises to the owner for the erection of what is now known as " Gretchen's Kitchen," all read together indicate an understanding between the parties wherein the tenancy was for a reasonable time, and not for one year.

The plaintiff asserts that the payment and acceptance of rent for the period of several weeks creates a presumption at least that this lease was automatically renewed. Such payments of rent, however, were made after the landlord had made an election. Dr. Tyler testified: " He wanted to know how long he could remain in the portion outside of the portion I was going to take over [*i. e.,* ' Gretchen's Kitchen ']. I said, ' You could remain a reasonable length of time.' "

Dr. Tyler, having made and indicated his election, it could not be altered. No presumption, therefore, arose by reason of the payment of rent. (*Stern & Co.* v. *Avedon & Co., Inc.,* 194 App. Div. 433; affd., 231 N. Y. 546.)

A vital and more difficult issue is presented whether the tenancy at will was legally and effectually terminated. If the plaintiff was a tenant at will on the dates mentioned in the complaint, then he becomes entitled to the rental from the subtenants.

It is asserted by the defendant that the letter dated October 31, 1938, in evidence as Exhibit 1, is a compliance with the statute; that such letter legally and effectually terminated the possession of this plaintiff.

Section 228 of the Real Property Law is in derogation of the common law, and its sole purpose is to furnish a landlord with a more expeditious remedy to recover possession than he formerly had by an action of ejectment. The statute must, therefore, be strictly construed.

The statute reads in part: " Which notice *must* be *served,* either by delivering to the tenant, or to a person of suitable age and discretion, residing upon the premises, or if neither the tenant nor such a person can be found, by affixing it upon a conspicuous part of the premises, where it may be conveniently read."

It will be observed that the statute says " must." This would indicate that service of the notice in the manner prescribed by statute is mandatory, and not permissive. Service of the notice may be made in a variety of ways.

1. By personal service.
2. By delivering to a person of suitable age.
3. By affixing it upon a conspicuous part of the premises.

Nothing is said therein in regard to the service by mail, or by incorporating such in a letter.

No decision has been brought to my attention, nor has any personal research disclosed a single case construing the question involved, except *Besdine* v. *Leitner* (166 Misc. 658).

In this case the representative of the landlord has contented himself with the writing of a letter. This letter is not even in content the simple recital of the language employed in the thirty-day notice. It discusses other matters. In this respect it is similar to the notice served in *Besdine* v. *Leitner* (*supra*), where the landlord incorporated in his notice not only the language employed in giving a thirty-day notice, but also included therein a permission to remain at an increased rate of rental.

The court is of the opinion that not only was the letter in evidence as Exhibit 1 not served in compliance with section 228 of the Real Property Law, but was not in content a compliance with the statute.

The court appreciates that this procedure is technical, but it is likewise fundamental and jurisdictional. Examination of other cases where statutory notice is required to create rights justifies this view. In *Morgan* v. *Powers* (83 Hun, 298) it was held that where the landlord, after the expiration of a notice to quit given to a tenant at will, gives a second notice, he thereby waives his right to proceed under the first notice. In *Witherbee, Sherman & Co.* v. *Wykes* (159 App. Div. 24), the notice was held to be insufficient because it required the tenant to remove within thirty days from the date of the service, and not at the end of the month. (See, also, *Fisher* v. *Rabinowitz,* 112 Misc. 78.)

It is, therefore, the conclusion of this court upon the law and facts that no lease for a period of one year was created by the parties, but that the plaintiff held over with the consent of the landlord for a particular purpose, as a tenant at will, which tenancy

was subject and still is to termination by a thirty-day notice served in compliance with section 228 of the Real Property Law, which in this case was not served pursuant to statute.

Judgment may enter for the plaintiff in the sum of $296.45, as stipulated.

Note: For the reasons set forth above, let judgment enter for the plaintiff in the following cases which were tried at the same time and submitted upon the same record:

| | |
|---|---|
| Arthur W. Bastede v. Wilcox-Crissey Company, Inc.... | $207 91 |
| Arthur W. Bastede v. Robert E. Feely................. | 89 41 |
| Arthur W. Bastede v. A. Fred Stohl.................. | 56 68 |
| Arthur W. Bastede v. George E. Lewis................ | 65 77 |

Together with interest and costs.